*230 After the argument of counsel, the court proceeded to deliver its opinion on the point of the admissibility of the trustees as witnesses, on the part of the complainant. r^ie reasons of the judgment of the comí; are not put on record: But I possess a manuscript in the hand-writing of chancellor Mathews, corrected in the hand-writing of chancellor Hutson, which is endorsed as follows: “ The opinion given by the court, on the point of law, whether the trustees could be admitted as evidence to defeat the trust deed;” which paper was found among a few of the papers of the Wilson cause. The following is a copy of that opinion:
“ The court said, there was not a single case of the .number cited by the counsel, which came up to the point now contended for, viz. that the trustees to a deed have been admitted to give parol evidence to defeat, or destroy the trust deed. The court has never gone further than admission of parol evidence, to explain, for the purpose of correcting errors, unravelling doubts, or apparent contradictions; and in some very special instances, to discover fraud. But no case has been produced to shew that the trastees have been admitted to prove the deed, to which they were parties, to bo fraudulent ab initio. No such case is to be found, as it would be repugnant to law and equity. The case of Man and Ward, in 2 Atk. 229, (relied on by the defendant’s counsel,) is the only instance where the grantor was admitted to prove the grant fraudulent: But in that case the grantor never had any estate in the thing granted; but it was a mere deception, to defraud the rightful owner — and it was well enough, under such circumstances. But that is not the case here — The defendant Wilson does not grant to the trustees the rights of others — There is no apparent fraud on the face of the deed, quoad Mrs. Wilson. But it is said there was a de-feazance to the bond or deed, to prove which the trustees are to he examined; and to shew that it was intended originally to prevent the trust deed taking effect, and were both executed at the same time. But the deed of defeazance itself is the best evidence of its existence; and it would be straining the rules too much to admit evidence *231 to prove that a defeazance was executed at the same time with the trust deed, although it bears date fifteen months after. A witness who has been guilty of fraud himself, shall not he permitted, by acknowledging the fraud, to injure a third person, who appears to be by the first deed an unimpeached cestui que trust; and thereby to exonerate himself from all the ill consequences that might arise to him, if the first deed should be establishad. He cannot be considered a disinterested witness. In Man and Ward the trustee was admitted as a witness to defeat a fraud, by giving evidence of the true statement of facts,- and thus restoring the éstate to the real owner. But' to permit it in this case, would he to sanctify a fraud, and to defeat the interest of a third person, who has a fair interest in a bona fide deed of trust. — Upon the whole, the court is of opinion, that the authorities reject the admission of trustees to defeat the trust deed; and shew that trustees are punishable for breach of trust: And where lord Hard-wicke says that parol evidence is admissible in equity to prove the merits or intentions of a deed, he could not have meant to go further than to say, that such evidence might be received to explain a deed — surely never to defeat it, unless there was some gross fraud; and certainly never where the trustee, called upon to give evidence, was himself particeps criminis, and swearing to exonerate himself, and to injure another. No deeds or settlements would he safe, if the trustees were admitted to come in, and by their evidence to defeat the trust estate. It would open such a door to fraud and perjux’y, and produce evils of such magnitude, that this coui't could not tolerate it. It was suggested in the answer that the complainant used fraud and misrepresentation to defendant, to induce the execution of the trust deed; bxit the coux*t is of opinion there has been no evidence of such fraud. The evidence shews that px’cvious to any letter being written by the complainant Mrs. Wilson to her husband, on the subject of tlie estate being confiscated, the commissioners of forfeited estates had actually taken hold of the estate; whether as Baird’s or Wilson’s is immaterial, for it justified the suggestion on the part of the complainant. The court *232 was therefore of opinion, that no parol evidence is adniis-sible in this cause, which goes to defeat the trust deed: Therefore the testimony of the witnesses who had been examined to that point should not be read.”

a.b.p.289.

3. b.p.290-l.
The entry in the register book is as follows: Wilson vs. Wilson — “The. court ruled that.no evidence which tends to defeat the validity of the trust deed in hill men tioned is admissible.”
The cause was then brought to a hearing on the merits, and was fully argued for several days by Mi*. Prin-gle, Mr. Holmes, general Pinckney, and Mr. E. Rut. ledge for complainant; — and by Mr. Dcsaussure, Mr, Parker, and Mr. Read for defendant.
On the part of complainant it was insisted, that this was not an unconscionable bargain, on the part of Mrs. Wilson. It was obtaining a settlement merely of the annuity which she had by her former husband for a valuable consideration, to wit, marriage. The expression in Mrs. Wilson’s letter to her husband, “ I will make use of the settlement if I can; if not, I will say I have no claim,” ought not to defeat the deed. It is not evidence of her not relying on the settlement; but of her apprehensions at a moment of embarrassment and distress. During the whole of Mrs. Wilson’s correspondence with her husband, her son by her first husband, Baird, was living' — Dn his death (in 1788) a great accession of fortune accrued to Mrs. Wilson. If a settlement had then been demanded by her, the court would have ordered it: But this is not done, —and will the court deprive her of the settlement originally obtained? The endeavour of the parties to evade the confiscation law, was not an immoral act. It is not a general law of the land; but a penal and strictlaw, against a few offending individuals, named in the act itself. Al • though the confiscation act declares all deeds and act3 done contrary to it to be void, the state is not a party here, And Whatever effect the claim of the state might have produced, it is not for Wilson, the defendant, to avail himself of the act. To give effect to the act, it was necessary to have made the state, or the commissioner of confiscation, a party to the suit-. Wilson’s possession of *233 the negroes, was in liis character of administrator, and not by virtue of his marital rights; and a husband possessing himself of an estate as administrator in right of his wife, is only a trustee for her. Wilson is an alien, and cannot hold the land under any pretence — The wife's rights in the land are not forfeited by her marrying an alien. If the defeazance had said that on condition, the vstato was not confiscated, then the settlement was to be. void, and the estate restored fully to the husband, that might have been good. But there was no condition to the defeazance, which was directly repugnant to the deed of settlement, and Mrs. Wilson was not a party to it, nor • onus ant of it. The trustees do no more in the defeasance than renounce their trust; but their doing so does not defeat the deed of trust. Their declaration that they would re-convey to Mr. Wilson, is of no validity without the consent of Mrs. Wilson. It would he to admit, that trustees erected to support trust deeds, may destroy them, without knowledge or consent of the cestui que use, which is contrary to every principle or mile of the court. The. several papers called defeazances have different witnesses, and bear different dates, and the witnesses speak of different places of execution. This throws discredit on them all. The court has refused to admit the testimony of the trustees, on oath: It will not receive, their evidence of the intent of the transaction, in the shape of a defeasance, not on oath. If the defeazance had really been fair an<l valid, Wilson's subsequent declaration tliat it was a good-natured act in him to give up her jointure, was a confirmation of the bond; and shews that he did then intend such a settlement as is contained in the bond. If the defeazance had been incorporated in the body of the deed of settlement, it would have been rejected as repugnant — -for the rule is, that the latter clause of a deed contradicting a former, is void.
The following cases were cited for complainant, 3 Atk. 21, 655. Talbot, 65. 2 Bla. 387, 327. Shephard, 381. 5 Bac. 396, 403. 1 Vesey, 539, Jewson vs. Moulson. 2 Atk. 520, 97, Douglas, 672, 697. 1 Bla. 44. 1 Ventr. 32. 2 *234 Vesey, 375. 1 Atk. 271. 1 Stra. 503. 1 Eq. Cas. abr. 67. 2 Eq. Cas. abr. 481. 3 P. Wms. 37.
For the defendant it was argued, that it was contrary the authority of the decided cases, that a party shall be allowed to set up a deed for a contrary purpose than that for which it was intended. The defeazance was strictly conformable to Mrs. Wilson’s own proposition by her letters, which was that such a settlement should be Inade as-would secure the estate from forfeiture; and that when that purpose was effected by the deed, the defeazance was to prevent its having any other effect. The discredit attempted to he thrown upon the defeazance, is Sot warranted by the evidence. It is common for parties 'to multiply copies or duplicates of an important paper, especially in time of war and peril. The defeazances are not dissimilar in substance or object: And the witnesses may very well, after the lapse of some years, forget at first, that they had seen two or more papers executed to the same purpose. Marriage settlements are not to be extended beyond their import: They are deviations from the fixed laws of the land, and should not he carried to extremes. They will become dangerous instruments of domestic unhappiness, by setting up imperium in impe-rio. The separation of interests between husband and wife, produced by marriage settlements, is calculated to produce many mischiefs, discords, loose morals and otlier ill effects. It relaxes the great bond of family union, and should not be favoured. The defendant executed the deeds under an impression made on him by Mrs. Wilson’s communications, that the estate would be taken from him by confiscation. This was not perfectly correct or-certain, and his act, under a false or doubtful impression, is not binding. It is a mistake which the court will rectify, or relieve against. A defeazance without a condition is good, where tlxe deeds are merely executory, as in this case. It is obvious, for Mrs. Wilson’s letters shew the fact, that these deeds were obtained by her solicitation, after marriage, expressly to avoid confiscation — That was the intention and the object of all the parties — The complainant, one of those parties, cannot then be permitted *235 to avail hei’fjcif of the deeds now, or induce the court to lend its aid to give them a literal execution, to work a different purpose. When two parties enter into a deed contrary to law, or to evade the law, this court will not support it — it will not assist to give it effect. Mrs. Wilson cannot execute any deed, under coverture, to defeat the lights of her infant daughter, in the inheritance: Yet such would he the effect of supporting these deeds made by the husband, after the marriage, if they are supported by the court, as to the land.. The annuity ceased on the death of young Baird, the son — it was merged in the inheritance. The expression used by Mrs, Wilson in her letter, shews that she considered the deeds as raised up for a special purpose, to elude confiscation, and for no other purpose: For she says, ‘s If they will admit of marriage settlements, I will shew mine- under the deed” — Si if not, I will say I have no claim.”
Tmcmir. nnor. lstvol-P-2*-
Decree deli-iiu.1 son,
The cases cited lor defendant were, 1 Bla. 442. 3 Bla. 2 Bla. 498. 433, 327, 342. glas, 253, 450, 468, 695. 429. 1 Bac. 286. 1 Vern. 261, 227, 233, 203. 2 Vern. 270, 307, 518, 186. 1 P. Wms. 108, 378. 2 P. Wins. 641. 1 Atk. 295, 547, sir F. Head’s case. 2 Atk. 98, 160, 257, 330, 447. 3 Atk. 72. Brown, C. C. 151. 2 Vesey, 54. Shephard, 182, 69, 382. Dou-2 Eq. Cas. abr. 481, case 15.
The court, consisting of chancellors Hutson and Mathews, (for Mr. Hugh Rutledge, then recently appointed chancellor, not having heard the arguments in the first stages of the case, did not sit at this hearing.) delivered their decree on the 4th August. — Chancellor Hutson deli* vered the judgment of the court. -
After greatly commending the learning, industry and ingenuity of the counsel, he stated that the first question for consideration was, whether the bond given by the defendant to the trustees, for the. benefit of the complainant, ¿3 such as this court will support?
2d. What is the extent of the bond, or of the property meant to be conveyed by it?
The defendant’s counsel made the following objections to the bond:
1st. That the bond was obtained by fraud or misrepresentation.
*236 2<f. That the wife was particeps criminis, and not to he favoured.
sd. That being a contract to defeat or evade a law, (^*10 confiscation act) it is ipso facto null and void.
4th. That it was given for a particular purpose, and ought not to be applied to another.
5th. That there was a defeazance' executed at the Same time, which defeats it.
To these objections the court gave the following answers — To the four first, that there did not appear to be any fraud or misrepresentation. The commissioners of confiscated estates had taken possession of the estate' — the wife, to save it, implored her husband to execute the bond, and protect the property for her and liei' child. This was a laudable motive; there was no crime in it. That it did not appear that the bond was given merely to cover the property from confiscation in evasion of the law; it was also to make provision for the wife and child. That with respect to the defeazance, there were three papers with different witnesses from those to the bond, — this is a mark of fraud. The bond itself is unobjectionable, as to the consideration, which was marriage; or as to the subject of it, the property; or the execution. But the defeazance has no force: It was not between the same parties, — the wife is no party to it, — the trustees had no right or authority to do any act to avoid the trusts, without the concurrence of the cestui que trust — nor is there'certain proof whether it was executed and delivered by the trustees to Mr. 'Wilson at the same time when he executed the bond. The defeazance therefore not standing in the way of the bond, it is good and valid, and entitled to its full effect from the court. With respect to the extent of the property covered by the bond, and its effects, the court said it covers the annuity; and as to the land, the defendant never had any legal rights in the real estate. He wd». attainted in Pennsylvania for adhering to the enemy, and holding a commission. His pardon from that state extended only to Ills person — he was an alien, and could not hold land. — [The court said nothing as to the personal estate claimed by complainant, as omitted by mistake-]
r. u¡p.99.
It was therefore decreed, that the master do dispose, on a credit of one, two and three years, oí ns many of the negroes as will he sidfioeut to raise the animal aura ol‘ -25CÍ. for the payment of Mrs. Wilson's annuity, dining her lile, to commence from the death of W. A, Bain!: That he fake, an account of all suras received by Blrs. Wilson, from that time, the amount of which is to bo carried i.*> the credit of Sir. Wilson, against the annuity: That lie do also inquire what will be a proper allowance to Mrs. Wilson, fox* the une of the land by Mr. Wilson, from the death of W. A. Baird, (the. son.) and report accordingly: That in the meantime tire injunction to stay Waste be continued, and that each party pay their own co.-ds. — -«(Icneral Pinckney, Mr. If. ilntledge, Mr. Prin-gle, and Mr. Holturu fire complainant,---Detmussurc, Barker and Read for defendant.